# United States District Court

## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| V. | |
| ROMERO GUTAVO-MENDEZ | CASE NUMBER: 1:16-mj-544 |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about August 22, 2016, in Marion County, in the Southern District of Indiana, the defendant did,

Possess with the intent to distribute 400 grams or more of a mixture of substance containing a detectable amount of N-phenyl-N [1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II Controlled Substance,

in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi). I further state that I am a Task Force Officer, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

_____
Andrew Jury, Task Force Officer, DEA

**Sworn to before me, and subscribed in my presence**

August 23, 2016                             at    Indianapolis, Indiana
**Date**

Debra McVicker Lynch, U.S. Magistrate Judge                _____
**Name and Title of Judicial Officer**                      **Signature of Judicial Officer**

## **AFFIDAVIT**

This Affiant, Andrew Jury, Task Force Officer, Drug Enforcement Administration, being duly sworn under oath states as follows:

### I. INTRODUCTION

1. I am a police officer with the Richmond, Indiana, Police Department and have been so employed for over fourteen (14) years. During the last seven and a half (7.5) years, I have been assigned to the Drug Enforcement Administration, Indianapolis District Office as a Task Force Officer.

2. In the course of his employment as a law enforcement officer, I have become involved in as well as led numerous investigations concerning the trafficking of illegal drugs in and around the State of Indiana. Included in these investigations have been cases involving marijuana, prescription medications, heroin, crystal methamphetamine, khat, and crack cocaine, among other illegal drugs.

3. I have worked exclusively in narcotics investigations for over ten years. During that time, I have obtained extensive training and experience in both long and short-term narcotics investigations, specifically where items of evidence that were seized concealed evidence relating to these narcotic investigations were concealed on computers, smart phones, cameras and other electronic media, including but not limited to external storage devices. For instance, in previous narcotics investigations, I have recovered the following during said investigations: text messages describing and/or arranging narcotics transactions, computer ledgers containing details about narcotics transactions, photographs showing evidence of said transactions, such as photographs of large amounts of money or narcotics that have been displayed on electronic media such as Facebook and/or Myspace, or photographs of items gained from proceeds of said narcotics trafficking, such as motor vehicles. The electronic items have provided both long and short term records of drug trafficking. I have worked extensively with a wide variety of narcotics detectives and investigators from many different agencies. While working with these narcotics detectives and Agents with the DEA, I have obtained knowledge that the aforementioned items are critical in narcotics investigations in addition to common items and tools used for drug trafficking.

4. I am an "investigative or law enforcement officer" within the meaning of Section 2510(7), Title 18, United States Code, that is, an officer of the United States who is empowered by law to

conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

5. This Affidavit is being submitted in support of a criminal complaint and arrest warrant charging **ROMERO GUTAVO-MENDEZ ("GUTAVO-MENDEZ")**, date of birth X/XX/1974 and social security number XXX-XX-8053, with possession with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).

6. The statements contained in this Affidavit are based in part on information provided by, and conversations held with, other members of law enforcement, my experience and background as a police officer and Task Force Officer of the DEA, and others described below.

7. I have not included each and every fact that has been revealed through the course of this investigation. I have set forth only the facts that are believed to be necessary to establish the required foundation for this issuance of the requested Complaint and Arrest Warrant.

## II. THE INVESTIGATION

8. On August 22, 2016, at approximately 1:17 P.M., Officer Jeff Glover of the Richmond, Indiana, Police Department, currently assigned to the Pro Active Criminal Enforcement (PACE) team, was monitoring Eastbound (EB) traffic on Interstate 70 at the 126 mile marker (MM) in Henry County, Indiana. Officer Glover observed a silver Mazda passenger car bearing California registration 6PES652 travel by his location and later catch up to a semi-tractor and trailer, following it too closely.

9. Officer Glover pulled out of the median and continued to monitor the Mazda. Officer Glover observed the Mazda continue to follow the semi-tractor and trailer too closely, in violation of Indiana Code 9-21-8-14. Subsequently, Officer Glover conducted a vehicle stop on Interstate 70 at the 131 MM. As Officer Glover approached the Mazda, he immediately observed an overwhelming odor of air freshener emanating from within the Mazda.

10. Officer Glover asked the driver, later identified as **GUTAVO-MENDEZ**, for his license, registration, and proof of insurance. Officer Glover noted **GUTAVO-MENDEZ** appeared overly nervous as he was visibly shaking as he retrieved the requested items. Officer Glover further requested **GUTAVO-**

**MENDEZ** exit the Mazda and accompany Officer Glover back to his police car. While **GUTAVO-MENDEZ** exited the vehicle, Officer Glover asked the passenger of the vehicle, Susana Orozco (herein after OROZCO), for identification. OROZCO provided Officer Glover with an expired California driver's license. Officer Glover observed the address listed on the license was Oakland, CA. OROZCO confirmed the address listed was her correct address and that **GUTAVO-MENDEZ** resided in Los Angeles. Officer Glover knew Oakland and Los Angeles were far away from each other in California and asked about OROZCO's relationship with **GUTAVO-MENDEZ**. OROZCO advised she and **GUTAVO-MENDEZ** were just friends but they were kind of dating. OROZCO also advised they were traveling to Middletown, Ohio.

11. Officer Glover asked **GUTAVO-MENDEZ** routine investigative questions regarding **GUTAVO-MENDEZ's** travel itinerary. **GUTAVO-MENDEZ** advised they were traveling to Dayton, Ohio to visit a friend of his. **GUTAVO-MENDEZ** advised they were going to stay for a few days and that the trip was like a vacation. Officer Glover then asked **GUTAVO-MENDEZ** about his relationship with OROZCO. **GUTAVO-MENDEZ** advised OROZCO was just a friend of his. **GUTAVO-MENDEZ** advised OROZCO resides in San Francisco and he met her in Tijuana, Mexico.

12. Officer Glover then explained the reason for the traffic stop to **GUTAVO-MENDEZ** and **GUTAVO-MENDEZ** acknowledged the reason for the stop. As Officer Glover continued to speak with **GUTAVO-MENDEZ**, he learned **GUTAVO-MENDEZ** departed California last Thursday, August 19, 2016.

13. Officer Glover requested fellow PACE officer, Sgt. James Goodwin, of the Henry County Sheriff's Department to come to assist along with Deputy Ernstes. Upon arrival, Officer Glover briefed officers on the traffic stop and advised that **GUTAVO-MENDEZ** and OROZCO had provided different destinations they were traveling to and **GUTAVO-MENDEZ** did not know where OROZCO lived.

14. Officer Glover requested Deputy Ernstes deploy his drug sniffing canine around the vehicle as he sensed criminal activity. At approximately 1:33P.M., Sgt. Goodwin requested OROZCO step out of the vehicle and have a seat in his police cruiser while Deputy Ernstes deployed his K-9 partner, "Manni" around the vehicle for an external sniff. While doing so, "Manni" demonstrated a change in

behavior indicating "Manni" detected the odor of drugs emanating from within the vehicle. Additionally, while Deputy Ernstes deployed "Manni" around the vehicle, Deputy Ernstes observed a glass pipe under the vehicle. Deputy Ernstes knew through his training and experience that this type of glass pipe was commonly used to smoke methamphetamine.

15. Subsequent to the alert for narcotics on the vehicle, **GUTAVO-MENDEZ** was secured in handcuffs and advised he was being detained for further investigation. Law enforcement then conducted a search of the Mazda. The search led to the discovery of a brick shaped package wrapped in several brown plastic shopping bags that was concealed in a duffel bag with men's clothing. Officer Glover unwrapped the shopping bags and located a vacuum bag that concealed an off white powder like substance.

16. Deputy Ernstes then read **GUTAVO-MENDEZ** his rights pursuant to *Miranda v. Arizona*, and **GUTAVO-MENDEZ** waived his rights and agreed to speak with law enforcement. Deputy Ernstes asked **GUTAVO-MENDEZ** what was in the package. **GUTAVO-MENDEZ** advised it was methamphetamine. However, a field test revealed a presumptive positive result for Fentanyl, which I know to be a Schedule II controlled substance.

17. Deputy Ernstes located an additional gray tape wrapped package under the rear seat that law enforcement believed to contain Fentanyl. Due to the extreme danger risk in handling and testing Fentanyl, the package was unopened and will be sent to a laboratory for testing.

18. Law enforcement then contacted the DEA Indianapolis D.O. and requested assistance in the investigation. Upon arrival, DEA Task Force Officers (TFO) Chase Kittinger and I interviewed **GUTAVO-MENDEZ** while Special Agent Kevin Steele interviewed OROZCO.

19. **GUTAVO-MENDEZ** advised Kittinger and I that he met an unknown Hispanic male in the parking lot of a Wells Fargo bank in Paris, California. While there, the Hispanic male concealed the aforementioned packages of contraband in the Mazda. The Hispanic male advised **GUTAVO-MENDEZ** that the packages contained methamphetamine and the unknown Hispanic male provided him with a sim card to place in his phone. **GUTAVO-MENDEZ** advised the Hispanic male instructed him to drive towards Dayton, Ohio and he would be contacted with further instructions on where to take the methamphetamine. Lastly, during the interview, **GUTAVO-MENDEZ** admitted the discarded glass pipe was his and that he smokes methamphetamine.

20. Officer Glover weighed the two (2) packages of suspected fentanyl and obtained an initial weight of 76.96 ounces or approximately 2,154.88 grams of fentanyl. I know from my training and experience that two (2) kilograms of fentanyl is consistent with being possessed for further distribution, as opposed to a personal use amount.

### III. CONCLUSION

21. Based upon my training and experience and the facts set forth herein, I submit there is probable cause exists for the arrest of **ROMERO GUTAVO-MENDEZ** for the offense of possession with intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).

Andrew Jury, Task Force Officer
Drug Enforcement Administration

SWORN TO BEFORE ME, AND SUBSCRIBED IN MY PRESENCE, THIS 23rd DAY OF AUGUST, 2016.

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana